**POLYMERS, INC. d/b/a Florida Polymers, a Florida corporation, Plaintiff,**

v.

**ULTRA FLO FILTRATION SYSTEMS, INC., a corporation; Ultra Flo, Inc., a corporation; and Iraco Filtration Systems, Inc., a corporation, Defendants.**

No. 98–151–Civ–ORL–19C.

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 14, 1998.

Emery Herbert Rosenbluth, Jr., Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Orlando, FL, Herbert L. Allen, Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., Orlando, FL, for Plaintiff.

Terry C. Young, Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, FL, David J. Kohs, Pohl & Short, P.A., Winter Park, FL, Kenneth L. Sherman, Sherman & Sherman, Los Angeles, CA, for Defendants.

## ORDER

FAWSETT, District Judge.

This cause came before the Court on the following matters:

(1) Defendant Iraco Filtration Systems, Inc.'s Motion for Dismissal Under F.R.C.P. 12(b)(2), (3) and (6), or in the Alternative, Motion for Transfer of Venue (Doc. No. 11, filed March 24, 1998); Defendant's Memorandum in Support of Motion (Doc. No. 12, filed March 24, 1998); and Memorandum by

Plaintiff Polymers, Inc. in Opposition to Motion for Dismissal Under F.R.C.P. 12(b)(2), (3) and (6), or, Alternatively, Motion to Transfer Case to the District of California (Doc. No. 21, filed June 15, 1998).

(2) The Report and Recommendation of the United States Magistrate Judge (Doc. No. 33, filed October 16, 1998); Plaintiff's Objection to the Magistrate's Report and Recommendation Dated October 16, 1998 (Doc. No. 34, filed October 23, 1998); and Iraco's Reply to Plaintiff's Objection to Magistrate's Report and Recommendation (Doc. No. 35, filed November 2, 1998).

## BACKGROUND

This is an action for declaratory judgment under 28 U.S.C. § 2201 that certain United States patents are invalid and not infringed. Defendant Iraco Filtration Systems, Inc. ("Iraco") has moved to dismiss the action for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief may be granted.[1] In the alternative, Iraco has moved for a transfer of venue of this suit to the United States District Court in and for the Central District of California.

On October 16, 1998, the United States Magistrate Judge issued a Report and Recommendation ("Report") recommending that Iraco's Motion to Dismiss be granted for lack of personal jurisdiction. On October 23, 1998, Plaintiff Polymers, Inc. d/b/a Florida Polymers ("Polymers") timely objected to the Report.

## LEGAL ANALYSIS

This Court makes a *de novo* determination of those portions of the United States Magis-

trate Judge's report or specified proposed findings or recommendations to which objection is made. Title 28 U.S.C. § 636(b)(1) (1993). This Court is authorized to accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. *Id.*

The issues on which Plaintiff bases its objections were expressly addressed in the Report. In this regard, after considering the record before the Court and the applicable law, the Court finds that the Magistrate Judge's thorough, well-reasoned opinion correctly states the facts and law applicable in this case with one modification. As a result, the Court adopts, affirms, and approves the Report with the following modification.

■■■ In addition to the grounds stated in the Report, the Court finds that it also does not have general personal jurisdiction over Iraco pursuant to Florida Statutes § 48.193(2) because there is no evidence that Iraco on its own engaged in substantial and not isolated activity in Florida. *See* Florida Statutes § 48.193(2). The only evidence that was presented showed that Defendant's agent engaged in some business activity in Florida. (Doc. No. 33 at 9–11). While Florida Statutes § 48.193(1)[2] creates specific jurisdiction as a result of the acts of an agent of a defendant, Florida Statutes § 48.193(2)[3] limits general jurisdiction to acts of the defendant itself. *See* Florida Statutes §§ 48.193(1), (2); *see generally Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir.1985) (limiting analysis to Florida Statutes § 48.193(1) in determining whether personal jurisdiction existed due to acts of agent). Florida Statutes § 48.193

---

1. Plaintiff voluntarily dismissed the other Defendants in this action. (Doc. No. 25, filed August 6, 1998).

2. Florida Statutes § 48.193(1) provides in pertinent part as follows:
 (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conduct, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

3. Florida Statutes § 48.193(2) provides as follows:

 A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

is strictly construed to guarantee compliance with due process. *See Steinhilber v. Lamoree,* 825 F.Supp. 1003, 1005 (S.D.Fla.1992). Thus, the Court also does not have personal jurisdiction over Iraco pursuant to Florida Statutes § 48.193(2) for this reason.

## *CONCLUSION*

Based on the foregoing, the Court rules as follows:

(1) Defendant Iraco Filtration Systems, Inc.'s Motion for Dismissal Under F.R.C.P. 12(b)(2)(3) and (6), or in the Alternative, Motion for Transfer of Venue (Doc. No. 11, filed March 24, 1998) is **GRANTED IN PART AND DENIED IN PART.** The Motion to Dismiss is **GRANTED** and the Motion for Transfer of Venue is **DENIED AS MOOT .** Plaintiff's Complaint (Doc. No. 1, filed February 12, 1998) is **DISMISSED WITHOUT PREJUDICE.**

(2) The Report and Recommendation of the United States Magistrate Judge (Doc. No. 33, filed October 16, 1998) is **ADOPTED, AFFIRMED, and APPROVED IN PART AND MODIFIED IN PART** in accordance with this Order. Plaintiff's Objection to the Magistrate's Report and Recommendation Dated October 16, 1998 (Doc. No. 34, filed October 23, 1998) is **OVERRULED.**

## *REPORT AND RECOMMENDATION*

GLAZEBROOK, United States Magistrate Judge.

By order of reference dated July 6, 1998 [Docket No. 23], this cause came on for an evidentiary hearing on August 21, 1998 on the limited issue of whether this Court should dismiss the complaint against defendant Iraco Filtration Systems, Inc. d/b/a Ultra–Flo Systems ["Iraco"][1] pursuant to Fed. R.Civ.P. 12(b)(2) for lack of personal jurisdiction for the reasons stated in the following motion:

| | |
|---|---|
| **MOTION:** | **IRACO'S MOTION FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(2), (3), AND (6), OR IN THE ALTERNATIVE, MOTION FOR TRANSFER OF VENUE** [Docket No. 11] |
| **FILED:** | March 24, 1997 |
| **RECOMMENDATION:** | **GRANTED** for lack of personal jurisdiction. |

## I. *PROCEDURAL HISTORY*

On February 12, 1998, plaintiff Polymers, Inc. d/b/a Florida Polymers ["Polymers"] filed a complaint seeking a declaratory judgment under 28 U.S.C. § 2201 that certain United States patents are invalid and not infringed. *See* Docket No. 1. The patents relate to water filtration systems and filter cartridges employed in those systems.

On March 24, 1998, Iraco filed a motion to discuss this action pursuant to Fed.R.Civ.P. 12(b)(2) (personal jurisdiction); (b)(3) (improper venue); and (b)(6) (failure to state a claim). In the alternative, Iraco moved to transfer venue of the suit to the United States District Court for the Central District of California. *See* Docket Nos. 11 – 12.

Polymers filed its memorandum in opposition to the motion to dismiss. Docket No. 21. On July 6, 1998, the Honorable Patricia C. Fawsett reserved ruling on defendants' motion to dismiss [Docket No. 11], and referred Iraco's motion to the undersigned magistrate judge for an evidentiary hearing and recommendation on the limited issue of whether this Court has personal jurisdiction over Iraco. *See* Docket No. 23. On August 21, 1998, this Court held an evidentiary hearing.

## II. *THE LAW OF PERSONAL JURISDICTION*

■ Iraco seeks dismissal of the complaint under Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over the person. An assessment of

---

1. Iraco is the only remaining defendant. On August 6, 1998, plaintiff Polymers, Inc. filed a notice of voluntary dismissal as to defendants Ultra Flo Filtration Systems, Inc. and Ultra Flo, Inc. Docket No. 25.

personal jurisdiction requires a two-part analysis. *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla.1989). In order to determine whether this Court has personal jurisdiction over non-resident defendants, the Court must first determine whether there is a basis for jurisdiction under Florida's long-arm statute, Fla.Stat. § 48.193. *See* Fed.R.Civ.P. 4(e)(1), (h), and (k); *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626–27 (11th Cir.1996). If the Court finds that personal jurisdiction exists under Florida's long-arm statute, the Court must then consider whether the defendant's contacts with the state of Florida are sufficient to satisfy the due process clause of the Fourteenth Amendment such that maintenance of the suit in Florida does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington,* 326 U.S. 310, 315–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Cable/Home Communication Corp. v. Network Productions, Inc. .,* 902 F.2d 829, 855 (11th Cir.1990); *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla.1989). If both prongs of the jurisdictional test are satisfied—Florida's long-arm statute and the due process analysis—then the Court may exercise personal jurisdiction over the nonresident defendant. *Madara,* 916 F.2d at 1516.

### 1. The Florida Long–Arm Statute

■ This Court examines the Florida long-arm statute as would the Florida Supreme Court because the reach of the statute is a question of state law. *See Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d 889, 890–91 (11th Cir.1983); *Structural Panels, Inc. v. Texas Aluminum Industries, Inc.,* 814 F.Supp. 1058, 1064 (M.D.Fla.1993). Florida's long-arm statute is strictly construed, and the plaintiff has the burden of proving facts which satisfy the criteria. *Oriental Imports & Exports,* 701 F.2d at 891. The pertinent subsections of Florida's long-arm statute provide:

(1) Any person, whether or not a citizen or resident of this state, who personally *or through an agent* does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) ***Operating, conducting, engaging in, or carrying on a business or business venture in this state*** or having an office or agency in this state.

\* \* \* \* \* \*

(2) A defendant who is engaged in ***substantial and not isolated activity within this state,*** whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla.Stat. § 48.193 (emphasis supplied). Where directly conflicting affidavits cause the Court to hold an evidentiary hearing, *see Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla.1989), the plaintiff bears the burden of proving personal jurisdiction at the evidentiary hearing. *See Musiker v. Projectavision, Inc.,* 960 F.Supp. 292, 295 (S.D.Fla.1997).

■ In order to establish that a non-resident defendant is carrying on a business or business venture in Florida, the Court must consider whether the sum of the defendant's collective business activities shows a general course of business activity in the state for pecuniary benefit. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 627–28 (11th Cir.1996) (relatively insignificant and sporadic sales efforts of three to five transactions grossing only $3,000 nevertheless qualified as a course of business activity in Florida for pecuniary benefit); *Musiker,* 960 F.Supp. at 295–96; *see also, Cauff Lippman & Co. v. Apogee Finance Group, Inc.,* 745 F.Supp. 678, 682 (S.D.Fla.1990) (one meeting in Florida, negotiations, and other communications by letter, telex and telephone from out of state were insufficient to obtain personal jurisdiction over non-resident defendants); *Jasper v. Zara,* 595 So.2d 1075, 1075–76 (Fla. 2d DCA 1992) (no personal jurisdiction where the plaintiff initially solicited the defendant in New York by phone and the defendant subsequently communicated with the plaintiff and his accountant by telephone and letter

over a period of 18 months); *Intercontinental Corp. v. Orlando Regional Medical Center*, 586 So.2d 1191, 1195 (Fla. 5th DCA 1991) (no personal jurisdiction where defendants' only, contacts consisted of letters and telephone calls from Kentucky or Indiana into Florida, and a single meeting attended by defendants' counsel in Florida).

■ A corporation may be subject to jurisdiction when it transacts business through its agents in the forum state, unless the agents are transacting business on their own account. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir.1996). Under Florida law, an agency relationship has the following elements: 1.) the principal acknowledges that the agent will act for it; 2.) the agent accepts the undertaking; and 3.) the principal controls the actions of the agent. *See Goldschmidt v. Holman*, 571 So.2d 422, 424 n. 5 (Fla.1990); *accord, Ilgen v. Henderson Properties, Inc.*, 683 So.2d 513, 514–15 (Fla. 2d DCA 1996). Control is critical in determining agency. *See Parker v. Domino's Pizza, Inc.*, 629 So.2d 1026 (Fla. 4th DCA 1993); *accord, Sculptchair*, 94 F.3d at 629. Under Florida law, a principal's actions may give rise to apparent authority and agency. *Overseas Private Investment Corp. v. Metropolitan Dade County*, 47 F.3d 1111, 1114 (11th Cir.1995); *Borg–Warner Leasing v. Doyle Electric Company, Inc.*, 733 F.2d 833, 836 (11th Cir.1984); *Ja Dan, Inc. v. L–J, Inc.*, 898 F.Supp. 894, 900 (S.D.Fla. 1995).

Where a defendant conducts isolated, insubstantial business in Florida, the plaintiff must show that its cause of action arises from the defendant's business activity in Florida. Fla.Stat. § 48.193(1)(a), (2). Where a state's long-arm statute requires that the plaintiff's cause of action arise out of defendant's business activity in the forum state, the mailing of two cease and desist letters threatening a patent infringement lawsuit, without more, is of insufficient quality and degree to be the "transaction of business" in the forum state. *Graphic Controls Corp. v. Utah Medical Products, Inc.*, 149 F.3d 1382, 47 U.S.P.Q.2d 1622 (Fed.Cir.1998) (no personal jurisdiction where declaratory judgment action arose out of cease and desist letters, and not out of commercial activity in New York); *accord, Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1270–71 (Fed.Cir.1998); *Genetic Implant Systems, Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458–59 (Fed.Cir.1997).

### 2. *Due Process Analysis*

■ If there is a basis for asserting personal jurisdiction under the long-arm statute, the Court then considers due process. *Black v. Bryant*, 905 F.Supp. 1046, 1051 (M.D.Fla. 1995). The due process analysis is a two-prong inquiry. First, the Court determines whether sufficient minimum contacts exist between the defendant and the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258–60 (11th Cir.1996); *Madara*, 916 F.2d at 1510. Second, the Court determines whether the maintenance of the suit is reasonable, and does not violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

### a. Minimum Contacts

■ In determining whether sufficient minimum contacts exist with the state of Florida, the Court considers whether the defendant has purposefully established minimum contacts with the forum state out of which the instant action arises. *See Hoechst*, 896 F.Supp. at 1193 (citing *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). The Court assesses whether the defendant has purposefully availed itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protection of its laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The cause of action must arise out of the contacts with the forum state. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir.1996) (no legitimate dispute that the marketing of infringing goods in Florida is intimately connected with

a patent and trademark holder's cause of action for patent infringement, trademark infringement, unfair competition, and breach of a licensing contract).

■■■■ The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. *Id.* at 475, 105 S.Ct. 2174; *accord World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Adequate contacts proximately result from a defendant's actions which create a "substantial connection" with the forum State. *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. The substantial connection between a defendant and the forum state must come about by an action of the defendant purposefully directed toward the forum state. *See Asahi,* 480 U.S. at 109–11, 107 S.Ct. 1026.

■■■■ Without more, the placement of a product into the stream of commerce is not an act purposefully directed toward the forum state, even if the defendant knows that commerce will sweep the product into the forum state. *See Asahi,* 480 U.S. at 112, 107 S.Ct. 1026. Nevertheless, additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state, such as marketing the product through a distributor who has agreed to serve as the sales agent in the forum state, or by establishing channels for providing regular advice to customers in the forum state. *Id.; see also, Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1545–48 (11th Cir.1993) (assessment that personal jurisdiction law remains unsettled after *Asahi* ), *cert. denied,* 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993).

**b. Reasonableness, Fair Play, and Substantial Justice**

■■■■ In the second prong of the due process analysis, the Court determines whether the maintenance of the suit is reasonable, and does not violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court considers the defendant's contacts with the forum state in light of several factors, including: 1.) the burden on the defendant in defending the lawsuit in the forum state; 2.) the forum state's interest in adjudicating the dispute; 3.) plaintiff's interest in obtaining convenient and effective relief; 4.) interstate judicial system's interest in obtaining most efficient resolution of the controversy; and 5.) shared interests of the several states in furthering fundamental substantive social policies. *See Asahi,* 480 U.S. at 113, 107 S.Ct. 1026; *Madara,* 916 F.2d at 1517.

## III. APPLICATION TO IRACO

### 1. The Florida Long–Arm Statute

Polymers has met its burden of proving facts which satisfy an initial criteria of the Florida long-arm statute. Iraco is a corporate "person" who is not a citizen of Florida who *through an agent* did acts enumerated in subsection (1) of Fla.Stat. § 48.193, specifically *operating, conducting, engaging in, or carrying on a business or business venture in this state,* and thereby submitted itself to the jurisdiction of the courts of Florida for any cause of action arising from the doing of those acts.

#### a. Robinson–Kirshbaum as Iraco's Agent

Ira Kirschbaum has an ownership interest in both Iraco and Robinson–Kirschbaum, two California corporations. Ira Kirschbaum owns 100% of the stock of defendant Iraco Filtration Systems, Inc. d/b/a Ultra–Flo Systems, and serves as Iraco's sole director and officer. Docket No. 21, Exhibit A at 5. Ira Kirschbaum and his son, Bruce Kirschbaum,[2] own 100% of the stock of Robinson–Kirschbaum Industries, Inc.

**2.** Bruce Kirschbaum, but not Ira Kirschbaum, assisted in providing Iraco's answers to Polymers' interrogatories. Docket No. 21, Exhibit A at 2. Sherman & Sherman's letters to counsel in Orlando, Florida, which overtly threatened litigation on behalf of Iraco show copies to Bruce Kirschbaum, but not to Ira Kirschbaum. Docket No. 12, Exhibit F.

Both Iraco and Robinson–Kirschbaum have the same business address: 8915 South La Cienega Boulevard, Inglewood, California. Through Robinson–Kirschbaum. Iraco licenses its Ultra–Flo filtration systems and sells its filters to customers. Robinson–Kirschbaum is Iraco's "exclusive licensed master distributor," Docket No. 21, Exhibit A at 3, and receives 5% of Robinson–Kirschbaum's gross sales of Iraco's Ultra–Flo filtration systems. Robinson–Kirschbaum is Iraco's "management company," and receives a management fee for rent, utilities, telephones, and storage. Robinson–Kirschbaum answers some telephone calls "Ultra–Flo." Docket No. 21, Exhibit C.

 Iraco has authorized Robinson–Kirschbaum to act for Iraco as Iraco's exclusive licensed master distributor to customers in the food service industry nationwide. Robinson–Kirschbaum has accepted that undertaking, and markets and distributes Iraco's Ultra–Flo products to those customers. Although there is no written agency or distributorship agreement, Iraco controls Robinson–Kirschbaum's right and ability to distribute patented Ultra–Flo systems and filters. As a matter of Florida law, Robinson–Kirschbaum is Iraco's agent for the distribution and sales of those items.[3]

Iraco and its agent, Robinson–Kirschbaum, have carried on a business or business venture in Florida. Iraco's exclusive master distributor markets Iraco's Ultra–Flo systems to food service industry customers in Florida through three sales representatives: Schantini & Associates; Commercial Beverage & Ice Systems, Inc.; and Florido & Associates. Docket No. 21, Exhibit A at 5. Iraco directs calls from Florida customers to one of the Florida representatives, who asks the customer to order Ultra–Flo products through the Florida representative. Docket No. 21, Exhibits D and E. The Florida representative sells the Ultra–Flo water filtration systems in Florida, Robinson–Kirschbaum then ships the goods and an invoice to the

Florida customer. Docket No. 21, Exhibits E and F.

Robinson–Kirschbaum extends to Florida buyers a limited warranty under the Florida Uniform Commercial Code for the full Ultra–Flo product line. Hearing Exhibit DX1, before Tab 1. Iraco (*sub nomine* Ultra–Flo Systems, Inc.) also warrants to buyers any filter cartridges used on municipally treated water systems. Hearing Exhibit DX1. Tab 10 at 10.

The sum of Iraco's collective business activities through Robinson–Kirschbaum—although slight—shows a general course of business activity in Florida for pecuniary benefit. Docket No. 21, Exhibit E. Therefore, there is an initial basis under the long-arm statute for asserting personal jurisdiction over Iraco for a cause of action that arises out of Iraco's Florida business.

**b. Polymer's Cause of Action Must Arise From Iraco's Acts**

 But Florida's long-arm statute, Fla. Stat. § 48.193(1)(a), extends personal jurisdiction to Iraco only if Polymers' declaratory judgment action arises out of Iraco's business activity in Florida. Polymers has not shown that its cause of action for declaratory judgment arises from Iraco's isolated and insubstantial business activity in Florida. Strictly construing the long-arm statute, the mailing of cease and desist letters to counsel in Florida threatening a patent infringement lawsuit are of insufficient quality and degree to be considered, in itself, as business activity in Florida. This Court has no personal jurisdiction over Polymers' declaratory judgment action because it arises out of Iraco's cease and desist letters, not out of Iraco's commercial activity in Florida.

 Moreover, Polymers has not proved that Iraco has engaged in *substantial and not isolated activity within this state* so as to make Iraco subject to personal jurisdiction regardless of whether Polymers' claim arises

---

**3.** Ira Kirshbaum and Bruce Kirshbaum did not appear as witnesses at the evidentiary hearing. In order to avoid appearing, they submitted affidavits. Docket Nos. 28, 29. The conclusory allegations in those affidavits are of almost no use to the Court. The witnesses were not subject to cross examination, and the Court cannot assess their credibility.

from that substantial activity.[4] *See* Fla.Stat. § 48.193(2). Indeed, Iraco's business activity in Florida falls far short of being "substantial." Docket No. 21, Exhibit E and F; Hearing Testimony of John G. Schantini. Polymers has proved no more than $6,000 of annual gross sales of Iraco (Ultra–Flo) products in Florida in 1997 and in 1998. Docket No. 21, Exhibits E and F; Hearing Exhibit PX 1 – 3.

 Polymers' cause of action seeks declaratory relief regarding patent validity and infringement. The cause of action does not arise out of Iraco's sales of Ultra–Flo filtration systems in Florida. Neither does Polymers' cause of action appear to have arisen out of any effort by Iraco *in Florida*[5] to stop Polymers from selling infringing filtration products. Although Polymers is a Florida corporation, it distributes its products through Oreck Corporation, a Louisiana distributor. Docket No. 1; Docket No. 12, Exhibit E. Principally and initially, Iraco directed its efforts toward Oreck in Louisiana to stop the sale of allegedly infringing products. Docket No. 12, Exhibit B. Although Iraco's attorney did later correspond directly with Polymers' Florida counsel, and did overtly threaten litigation, Docket No. 12, Exhibit F; counsel's threat to sue Polymers in some unstated location hardly qualifies as proof of Iraco's substantial and not isolated activity in Florida.

### 2. *Due Process Analysis*

No basis for personal jurisdiction having been shown under the long-arm statute, there is no need for the Court to consider due process. The Court does so anyway as an alternative basis for recommending dismissal.

### a. Minimum Contacts with Florida

 Iraco is not licensed by the state of Florida, and has no employees, officers, property, address, or telephone number in Florida. Without more, Iraco's placement of filters and filtration systems into the stream of commerce is not an act purposefully directed toward Florida, even though Iraco knows that commerce will sweep the products into Florida. Nevertheless, Iraco's additional conduct indicates an intent or purpose to serve the market in Florida.

Iraco marketed filters and filtration systems in Florida through a distributor. Robinson–Kirschbaum. Iraco has made its management company, Robinson–Kirschbaum, the exclusive licensed master distributor of Iraco products. Iraco has allowed Robinson–Kirschbaum to market Iraco products to food service customers in Florida. Through Robinson–Kirschbaum, Iraco has established channels for providing some regular advice to food service industry customers in Florida. Therefore, Polymers has demonstrate that Iraco has purposefully established contacts with Florida. Through its agent, Iraco has purposefully availed itself of the privilege of conducting a small number of business activities in Florida.

Nevertheless, as discussed above in connection with the Florida long-arm statute, Polymers has failed to establish that its declaratory judgment action arises out of Polymers' contacts with Florida. Polymers has not brought an infringement action against Iraco alleging that Iraco distributed infringing goods in Florida. On the contrary, Polymers seeks a declaration that Iraco's patents are invalid and not infringed. Docket No. 1. Polymers does not allege that its declaratory judgment action arises out of Iraco's distribution of patented goods in Florida, through Robinson–Kirschbaum or otherwise. Iraco's distribution of its own patented goods in Florida is not intimately or sufficiently connected with Polymers' action to obtain a declaration that Polymers' goods do not infringe Iraco's patents.

---

4. Said differently, substantial and not isolated activity in Florida would have subjected Iraco to the jurisdiction of the Florida courts whether or not Polymers' claim arose from that activity. Fla.Stat. § 48.193(2).

5. Polymers alleges that Iraco "threatened litigation against Plaintiff *in the State of Florida.*"

Docket No. 21 at 4 (emphasis supplied). When questioned at the hearing about the factual accuracy of this representation, counsel for Polymers informed the Court that he had meant that Iraco's attorney had mailed a threat into the state of Florida addressed to Polymers' attorney. *See* Docket No. 21, Exhibit G.

Rather, Iraco is being haled into court in the Middle District of Florida solely as a result of attenuated contacts: cease and desist letters mailed to Polymers' counsel in Florida threatening infringement litigation in some undisclosed forum. Such attenuated contacts do proximately result from Iraco's actions, but do not create a "substantial connection" with Florida, even when considered in light of Iraco's Florida business. Iraco initially directed its "cease and desist" actions toward Polymers' distributor in Louisiana, and later toward counsel in Florida after he surfaced. The cease and desist letters, however, do not result from any significant action of Iraco purposefully directed toward Florida. Iraco's attenuated contacts with Florida therefore fall short of the minimum contacts necessary for this Court to have personal jurisdiction over Iraco in this declaratory judgment action.

### b. Reasonableness, Fair Play, and Substantial Justice

█ First, the Court considers Iraco's contacts with Florida in light of the burden on Iraco in defending the lawsuit in Florida. Iraco would shoulder a somewhat greater expense and burden by pursuing its infringement claims in Florida, several thousand miles from its California domicile. Polymers has proved only a very small amount of Iraco business in Florida. Iraco might spend more money in one day for local counsel's time and expenses at trial in Florida than Iraco has received as 5% of gross sales from its Florida customers in a year. This factor makes it less reasonable to permit Polymers to maintain this declaratory judgment action against Iraco in Florida.

Second, the Court considers Iraco's contacts with Florida in light of Florida's interest in adjudicating the dispute. Florida has an interest in the presence of a local forum for the adjudication of a federal patent infringement dispute between a Florida corporation and a foreign patent holder. This is no less true where the foreign patent holder sells a small quantity of patented goods in Florida, or where the Florida corporation merely seeks a declaration of invalidity and non-infringement. Nevertheless, Florida's interest is rather slight, given the national scope and federal nature of patents, and given the availability of a very capable federal forum in California. No doubt, the California forum is less accessible to a Florida corporation. This factor, on balance, makes it less reasonable to permit Polymers to maintain this declaratory judgment action against Iraco in Florida.

Third, the Court considers Iraco's contacts with Florida in light of Polymers' interest in obtaining convenient and effective relief. Polymers can obtain fully effective relief in California, a state with which Iraco has solid contacts. Nevertheless, obtaining relief in California would be less convenient and somewhat more expensive for Polymers than obtaining relief in Florida. On balance, this factor makes it less reasonable to permit Polymers to maintain this declaratory judgment action against Iraco in Florida.

Fourth, the Court considers Iraco's contacts with Florida in light of the interstate judicial system's interest in obtaining the most efficient resolution of the controversy. Witnesses and evidence may be found both in California and in Florida. Both Polymers and Iraco would incur similar additional expenses litigating in a remote location, including expenses for local counsel and travel. Duplicate suits or dismissed actions are seldom most efficient.

From the standpoint of the federal courts, it may be slightly easier to resolve validity and infringement issues in the context of a straight infringement action against Polymers together with any other alleged infringers, rather than in the "mirror image" context of a declaration of invalidity and non-infringement.[6] This declaratory judgment action does not arise out of Iraco's attenuated business contacts with Florida, so efficient resolution consistent with due process must be achieved outside Florida. This factor

---

**6.** Iraco proposes to file such a suit in the Central District of California. Docket No. 12, Exhibit H. The Court fully understands that the federal courts resolve these issues daily in both contexts, and that the mirror image is often reflected in a counterclaim. Indeed, Polymers may choose to file a declaratory judgment action first in the Central District of California.

makes it less reasonable to permit Polymers to maintain this declaratory judgment action against Iraco in Florida.

Fifth, the Court considers Iraco's contacts with Florida in light of the shared interests of Florida and California in furthering fundamental substantive social policies. Florida and California have equal interests in providing corporations with federal forums in which to determine the validity of patents and in which to award damages for infringement. This factor is neutral as to whether it is reasonable to permit Polymers to maintain this declaratory judgment action against Iraco in Florida.

In conclusion, the above factors largely predominate against the reasonableness of finding personal jurisdiction over Iraco in Florida. The filing and maintenance of a lawsuit in Florida against a California corporation that has only attenuated contacts with Florida violates "traditional notions of fair play and substantial justice" where that suit does not arise out of the attenuated contacts.

## IV. CONCLUSION

For the reasons stated above, Iraco's motion to dismiss the complaint [Docket No. 11; *see also* Docket No. 23] should be GRANTED pursuant to Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over the person. Failure to file and serve written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within **ten** days of the date of this report and recommendation shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

Oct. 16, 1998.